UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SUBURBAN BUSINESS PRODUCTS, INC. d/b/a SBP Image Solutions,<br><br>    Plaintiff,<br><br>    v.<br><br>GRANITE CITY COMMUNITY UNIT SCHOOL DISTRICT NO. 9,<br><br>    Defendant. | Case No. 13-cv-366-JPG-PMF |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for summary judgment filed by defendant Granite City Community Unit School District No. 9 ("District") (Doc. 21). Plaintiff Suburban Business Products, Inc. ("SBP") has responded to the motion (Doc. 29), and the District has replied to that response (Doc. 34).

**I.   Standards for Summary Judgment**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Tolan v. Cotton*, No. 13-551, 2014 WL 1757856, at *6 (U.S. May 5, 2014) (*per curiam*); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008).

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712

F.3d 1166, 1168 (7th Cir. 2013). Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. It may present evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B). *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

**II.    Facts**

The admissible evidence in the record, viewed in SBP's favor, establishes the following relevant facts.

Prior to the 2006-07 school year, the District requested proposals for bids on providing digital copy machines and maintenance service to the District for the 2006-07 to 2010-11 school years. SBP submitted a bid, and on May 23, 2006, the District's Board of Education ("Board")

awarded it the contract.

On that same day, SBP President Richard Shay and the District's Director of Finance Dennis Burnett signed the Equipment Rental Agreement ("Rental Agreement") and the Digital Copier Maintenance Agreement ("2006 Maintenance Agreement"). The Rental Agreement states that SBP will provide thirty-four copy machines to the District for a term of five years, and in exchange the District will make quarterly payments of $17,246.04. It also states that the District is responsible for protecting the rented copiers from damage other than ordinary wear and tear. The 2006 Maintenance Agreement provides that SBP will provide maintenance and supplies for the copiers rented in the Rental Agreement. In exchange the District will make quarterly payments of $10,965.00 plus $0.0043 per page (referred to as a "per click" charge) for copies over 10,200,000 annually.

In March 2007, SBP assigned the right to receive payments under the Rental Agreement and the 2006 Maintenance Agreement to Royal Banks of Missouri ("Royal Banks") and instructed the District to make payments under those agreements directly to Royal Banks. The District complied with the request and made subsequent payments to Royal Banks.

In the spring of 2007, an SBP sales representative prepared another Digital Copier Maintenance Agreement ("2007 Maintenance Agreement") with the same price terms as the 2006 Maintenance Agreement and sent it to Burnett. The parties never executed the agreement but they performed during the 2007-08 school year under the same terms as they had during the 2006-07 school year.

Until the spring of 2008, SBP continued to service the rented copiers and the District continued to pay $10,965 quarterly and any other "per click" charges assessed. However, on April 14, 2008, the District informed SBP that it would not renew the maintenance agreement for the 2008-09 school year and it no longer allow SBP onto the District's property to service the

rented copiers. SBP, believing it had a five-year maintenance agreement with the District, objected to the District's decision. Nevertheless, the District did not allow SBP to perform any further copier maintenance services. Instead, the District hired another company to provide the needed service and stopped paying SBC quarterly payments of $10,965.00. The District also declined to pay $0.0043 "per click" for 5,281,768 copies over and above 10,200,000 annually, an amount totaling $22,711.60.

At the conclusion of the 2010-11 school year, SBP found that one of the rented copiers had been damaged beyond normal wear and tear. The District has presented expert testimony that, with ordinary wear and tear and considering the approximately 3.3 million clicks registered on the copier, it would have been worth only $150. SBP contends it would have been worth $5,495.00 had it only suffered ordinary wear and tear, but in its damaged condition it was essentially worthless.

SBP filed suit in Missouri state court against the District on April 2, 2012, and the District removed the case to the United States District Court for the Eastern District of Missouri – *Suburban Business Products, Inc. v. Granite City Community Unit School District No. 9* ("*SBP I*"), 4:12-CV-914 (CEJ) in the United States District Court for the Eastern District of Missouri. After a hearing, the District Court dismissed the suit on December 31, 2012, without prejudice for lack of personal jurisdiction over the District. Critical to that ruling was the finding that the Rental Agreement and the 2006 Maintenance Agreement were separate contracts such that a clause alleged to be in the Rental Agreement stating that the District consented to the jurisdiction of courts in Missouri did not apply to a dispute over the Maintenance Agreement. *SBP I*, No. 4:12-CV-914 (CEJ), 2012 WL 6738496, at *3 (E.D. Mo. Dec. 31, 2012) ("The Court concludes that the 2006 Rental Agreement and the 2006 and 2007 Maintenance Agreements are separate contracts.").

On April 15, 2013, SBP filed suit in this district alleging claims for breach of contract for the terminated copier service relationship (Count I), a "suit on account" for the unpaid excess "per click" charges (Count II) and breach of contract for the failure to protect the damaged copier from damage beyond ordinary wear and tear (Count III). The District asks the Court to grant summary judgment on all counts.

**III.    Analysis**

All parties agree that Missouri law applies to this case.

A.    <u>Count I</u>

In Count I, based on breach of the 2006 Maintenance Agreement, SBP seeks $158,249.85 in unpaid quarterly payments, "per click" charges for copies over 10.2 million, and finance charges for the school years 2008-09, 2009-10 and 2010-11. The District seeks summary judgment on Count I on the grounds that the 2006 Maintenance Agreement was a one-year contract and had no force and effect during the 2008-09, 2009-10 and 2010-11 school years and that there is no other written maintenance agreement covering the 2008-09, 2009-10 and 2010-11 school years signed by the School Board president or his designee as required by Missouri law, *see* Mo. Rev. Stat. § 432.070.   SBP contends the 2006 Maintenance Agreement satisfied Missouri law and was for a period of five years so the failure to pay during the 2008-09, 2009-10 and 2010-11 school years.

The key issue here is what the parties intended the term of the 2006 Maintenance Agreement to be. Under Missouri law, "[t]he cardinal rule in contract interpretation is to ascertain the intention of the parties and to give effect to that intention." *ATC Co. v. Myatt*, 389 S.W.3d 732, 735 (Mo. Ct. App. 2013).   Where the contract is clear and unambiguous, the Court will enforce it as written without reference to outside matter.   *Id.*   A contract is ambiguous if it "is reasonably susceptible of more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person."   *Id.*   The Court may look at extrinsic

5

evidence to determine the parties' intent in an ambiguous contract. *Id.* at 735-36. If there is no evidence of the parties' intent, the Court will construe the contract against its drafter. *Id.*

There is a genuine issue of material fact regarding the term of the 2006 Maintenance Agreement. The 2006 Maintenance Agreement itself does not plainly and unambiguously state its term, and there are circumstances that suggest it was for more than one year. For example, it includes a box checked indicating there is a "Five (5) Year Performance Quality and Upgrade Guarantee[.] Customer can request a relacement [sic] unit to replace a problem unit at NO CHARGE to the District." This five-year guarantee suggests the term of the agreement is five years, for why would anyone guarantee an item for five years where the contract was only for a single year? Additionally, the agreement allows "10,200,000 copies *annually*" (emphasis added) with additional copies for a per-click charge. If the agreement was intended to last only one year, there would be no need to include the term "annually"; the contract would simply say it allows "10,200,000 copies" with additional copies for a per-click charge. Finally, the Court considers extrinsic evidence because the contract is not clear on its face as to its term. The 2006 Maintenance Agreement was executed in response to a Request for Proposal that sought copying services for a five-year period and that required the copiers to be covered by a maintenance contract. A reasonable inference could be that any agreement as to maintenance of those copiers would be for a five-year term as well. These pieces of evidence could lead a reasonable fact-finder to find that the 2006 Maintenance Agreement was for a five year term and that the District repudiated the last three years of the contract. Summary judgment is therefore not warranted on Count 1.

  B. <u>Count II</u>

In Count II, SBP seeks to recover $22,711.60 in per-click charges for copies over 10.2

million for the 2008-09, 2009-10 and 2010-11 school years under a "suit on account" theory.[1] The District seeks summary judgment on Count II on the grounds that there were no maintenance services performed during those school years which could have caused damages in a "suit on account." SBP argues it provided copies pursuant to the 2006 Maintenance Agreement even if the District prevented it from performing maintenance services.

As the Court noted in an earlier order, under Missouri law, a "suit on account" is used to recover money for services performed or property delivered. *Helmtec Indus., Inc. v. Motorcycle Stuff, Inc.*, 857 S.W.2d 334, 335-36 (Mo. Ct. App. 1993). It is based in contract law and requires proof of an offer, acceptance and consideration. *Id.* In order to prevail on a "suit on account," the plaintiff must show that "1) defendant requested plaintiff to furnish merchandise or services, 2) plaintiff accepted defendant's offer by furnishing such merchandise or services, and 3) the charges were reasonable." *Id.* It is generally used where there is no written contract acknowledged by both parties such as, for example, when one company requests goods or services from another, and the other company provides them and maintains an account of amounts due in payment for those goods or services. *See, e.g., id.* at 335 ("suit on account" for motorcycle helmets shipped to defendant pursuant to oral agreement); *Heritage Roofing, LLC v. Fischer*, 164 S.W.3d 128, 131 (Mo. Ct. App. 2005) ("suit on account" for oral agreement to perform roofing work).

There is evidence that in the RFP, the District requested SBP to furnish copier and maintenance services, and no party disputes that the charges for those services were reasonable. However, SBP did not provide any maintenance service for the 2008-09, 2009-10 and 2010-11 school years. Thus, it has provided nothing "on account" and cannot prevail on Count II. To the extent the District owes SBP any per-click charges, those sums will be recoverable in Count I,

---

[1] The Court has already determined there is a genuine issue of material fact regarding whether the 2006 Maintenance Agreement covered that time period, so for the purposes of this part of the District's motion, the Court presumes it does.

SBP's breach of contract claim or not at all.

    C.    <u>Count III: Enforceability of Rental Agreement</u>

In Count III, SBP seeks to recover $5,495 for the District's failure to protect a copier from damage beyond ordinary wear and tear, as the District promised it would do in the Rental Agreement. The District seeks summary judgment on Count III on the grounds that SBP (1) lacks standing to sue since it had assigned its right to payment under the Rental Agreement to Royal Banks, (2) is judicially estopped from claiming breach of the Rental Agreement after representing in *SBP I* that the Rental Agreement had not been breached and (3) has overestimated the value of the damaged copier.

The District has not pointed to any facts demonstrating that SBP assigned any of its agreements to Royal Banks, as opposed to simply directing that payment be made to that entity. The District has further not cited any caselaw in support of the position that a contracting party cannot enforce a contract if it assigns its right to payments under the contract. The District has failed to establish it is entitled to summary judgment on this basis.

As for judicial estoppel, the Court has reviewed the transcript of the *SBP I* hearing and notes that, when read in context, SBP's representations at that hearing were that the District owed no *rental payments* under the Rental Agreement. It never represented that the District did not owe under other provisions of that agreement. Thus, SBP is not judicially estopped from making that argument in this case.

Finally, to the extent there is an issue of fact as to the value of the allegedly damaged copier, that difference is immaterial to this summary judgment motion or to the Court's jurisdiction to hear this case. Subject matter jurisdiction, including the amount in controversy for diversity cases, is established at the time a case is filed. *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006). Here, the complaint alleged a jurisdictionally sufficient amount in controversy

when this case began, and the claims comprising that jurisdictional amount remain pending, although, as discussed in the following section, the Court will revisit the jurisdictional issue *sua sponte*.

D.     Amount in Controversy

After review of the file in conjunction with the summary judgment briefing, the Court questions its subject matter jurisdiction in light of the damages SBP is seeking.   SBP has invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332(a), which requires the amount in controversy, excluding interest and costs, to exceed $75,000.   Throughout this case, SBP has assumed its damages for Counts I and II are equal to the amount the District did not pay for three years under the terms of the 2006 Maintenance Agreement (assuming it was a five-year agreement).

However, the Court believes a more appropriate measure of damages may be SBP's lost profits that resulted from its inability to perform for three years.   *See* Restatement (Second) of Contracts § 347 (measure of damages is "the loss in value to him of the other party's performance caused by its failure or deficiency . . . less . . . any cost . . . he has avoided by not having to perform.").   SBP has not had to pay for labor, equipment, supplies or other costs to provide service for three years.   Its loss should not be measured by the amounts the District did not pay but by its lost profits, that is, amounts due under the contract minus the cost of providing the service. To hold otherwise would allow a windfall to SBP.   The Court has no idea what it would have cost SBP to perform the 2006 Maintenance Agreement for three years and the magnitude of profits it lost because it did not perform.

It is SBP's burden to prove it belongs in federal court.   *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) (stating, "the one who claims that the power of the court should be exerted in his behalf . . . must carry throughout the litigation the burden of showing

9

that he is properly in court"). Accordingly, the Court will order SBP to prove it belongs in this forum.

IV. **Conclusion**

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the District's motion for summary judgment (Doc. 21). The motion is **GRANTED** to the extent it seeks summary judgment on Count II and **DENIED** in all other respects;

- **ORDERS** SBP to **SHOW CAUSE** on or before June 13, 2014, why the Court should not dismiss this case for lack of subject matter jurisdiction because of the amount in controversy. The District shall have fourteen days to respond to SBP's response. No brief shall exceed ten pages; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED: May 16, 2014**

                 s/J. Phil Gilbert
                 **J. PHIL GILBERT**
                 **DISTRICT JUDGE**